**PACIFIC CUSTOMS BROKERAGE CO.**

v.

**UNITED STATES.**

**A.R.D. 284; Reappraisements R63/8376 and R63/7876.**

United States Customs Court,
First Division, Appellate Term.
April 14, 1971.

John C. Ray, Detroit, Mich., for appellant.

L. Patrick Gray, III, Asst. Atty. Gen. (Robert Blanc, New York City, trial attorney), for appellee.

Before WATSON, MALETZ, and RE, Judges.

WATSON, Judge:

This case is before the court pursuant to an application for review of the decision of the trial judge in Pacific Customs Brokerage Co. v. United States, 63 Cust.Ct. 623, R.D. 11685 (1969). The merchandise in dispute consists of birch veneer which was exported from Canada and appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit price in United States dollars, less 2% discount, packed.

Plaintiff appealed for reappraisement and claimed that the proper export value was the appraised value less an additional 5%. Plaintiff claims that this 5% reduction reflects an agreement by which the importer undertook to pay the invoiced price in Canadian funds at a 95% exchange rate.

The trial judge took note of the fact that none of twenty-two other invoices placed in evidence, covering exportations of birch veneer made by the exporter to other United States importers, provided for such exchange rate adjustment in payment. The trial judge found that this exchange rate arrangement was not in the ordinary course of trade.

The trial judge cited as controlling the case of United States v. Enrique Vidal Sanchez, 15 Ct.Cust.App. 443, T.D. 42642 (1928). In that case the Belgian manufacturer of certain cast-iron pipes and fittings added a 6% charge to the price of the merchandise to insure itself against fluctuation of the Belgian franc. The Court of Customs Appeals held that the export value of the merchandise did not include the 6% in question since such charge did not constitute a charge which was part of the price of such merchandise as it was sold in the ordinary course of trade.

Relying on this the trial judge herein stated as follows:

* * * [I]t is clear that the exchange settlement reflected on the invoices at bar represents special treatment for a special kind of situation obtaining only with respect to the importer herein. As such, the exchange settlement accorded the importer cannot operate to influence export value as it does not reflect a practice which was within the ordinary course of trade in Canada during the time in question. It follows, therefore, that the appraiser did not err in disregarding the exchange settlement shown on the invoices covered by the entries at bar in arriving at an export value determination for the merchandise herein.

Appellant cited as error the trial court's failure to consider the merchandise involved as singular and unique; its use of sales of other birch veneer to establish the ordinary course of trade for such or similar merchandise and its analysis and interpretation of United States v. Enrique Vidal Sanchez, supra.

We will deal with each of these contentions in their turn. It is apparent from the decision below that the trial judge did not consider the imported birch veneer to constitute a unique and singular form of merchandise. If it were unique, of course, comparisons with other merchandise would be precluded and the course of trade in which it was ordinarily sold would be the ordinary course of trade for the purposes of establishing its export value. We are of the opinion that the finding implicit in the opinion below, that the instant merchandise is not unique and singular in the tariff sense, is adequately supported in the record. We are of the opinion that the record does

not contain sufficient evidence to support a finding that the instant importation is of a unique nature, was not sold to any other importers and was by reason of its differing widths so distinct as to be dissimilar under the law. The testimony fails to establish that the instant importation is not commercially interchangeable with the birch veneer whose sales were used to establish the ordinary course of trade. This test of commercial interchangeability is the dominant consideration in the determination of similarity. C. J. Tower & Sons v. United States, 50 CCPA 76, C.A.D. 824 (1963). The material substance of all these birch veneers appears to be the same and the sole distinction of varying width cannot operate to destroy the similarity.

It follows from the above that the trial judge did not err in deriving his conclusions about the ordinary course of trade from a study of the manner of sale of the birch veneer covered by the twenty-two invoices placed in evidence.

Appellant assigns as error the trial judge's application of the case of United States v. Enrique Vidal Sanchez, *supra.* We find that the rule of that case was correctly applied. In that case, the Court of Customs Appeals held that the export value of certain cast-iron pipes manufactured in Belgium should not include a sum in the amount of 6% of the price added by the manufacturer to insure itself against fluctuations in the value of the Belgian franc. The court, in discussing the 6% charge for insurance against the fluctuation of the currency, as well as two other items not relevant here, stated, "* * * [T]he three items last above discussed are not such as, 'in the ordinary course of trade,' constitute a part of the export price of the goods in question. Each and all of them were occasioned by the unusual and extraordinary requirements of the importer. If he had been content to buy his goods *as such goods were ordinarily sold for export* such additional charges would not have been made. They were not a part of the ordinary export value, and

hence can not be deemed dutiable." [Emphasis supplied.]

Appellant makes an argument in its brief which can best be discussed if a short segment of the brief is quoted, as follows:

* * * In the Sanchez case the "cushion" against fluctuation of the Belgian franc vis-a-vis American dollars was added to the export price. In subject case the exporter and importer agreed to settlements of their transactions on a pegged exchange basis, viz, a 95% parity of the Canadian dollar in relation to the United States dollar. As in Sanchez, the pegging in the instant case was not "in the ordinary course of trade." It was singular with export sales to Pivnick only and pertained to veneer which had no "such or similar" counterpart.

In [the] Sanchez case the Appellate Court sustained the exchange settlement factor as not being part of export dutiable value, while in subject case the Court rejected it. * * * "

Keeping in mind that we read the trial court's decision as containing the view that the imported merchandise was similar to other birch veneer, the *Sanchez* case was not misinterpreted or misapplied. The principle is the same in the *Sanchez* case and in the case below, but as a result of the differing factual situation, the result is different. In *Sanchez*, since the 6% was not found to be part of the export value in the ordinary course of trade, it was an addition and was *eliminated* to arrive at export value. Here, the exchange rate agreement results in what is in effect a subtraction from export value or a 5% discount. Since this agreement was not in effect in the ordinary course of trade in sales of such or similar merchandise, the 5% must be *included* in order to arrive at export value.

The key to this decision is the finding that such or similar merchandise is freely offered for sale at a price which is not modified by payment at a special exchange rate. We are of the opinion that the trial judge was correct in finding

that the instant merchandise, although it differed from other veneers in being produced in random widths, did not differ to such an extent that it was a unique genre of merchandise. At the very least, it was similar to the ordinary birch veneer of predetermined widths sold by the manufacturer and covered by some twenty-two representative invoices placed in evidence by appellee.

Since the random width veneer is not a class unto itself for the purpose of applying the criteria of export value, the practice of payment of 95% of the invoice price is not in the ordinary course of trade. The ordinary course of trade is payment at 100% of the invoice price and that is the export value.

We would have preferred a more detailed and explicit discussion by the trial judge of the issue of whether the importation had any counterparts or was unique. Nevertheless, we read his decision and his finding of fact, number 3, stating "[t]hat plaintiff has failed to prove that an exchange settlement involving Canadian dollars against United States dollars in the ratio of 95 percent and affecting the said merchandise conformed to the ordinary course of trade in Canada during the period between October, 1962 and June, 1963", as referring to that course of trade which the record establishes as being controlling in the sales of veneer of predetermined width. This, together with the trial judge's obvious consideration of all the transactions as evidence involving comparable birch veneer, leads us to conclude that he treated such transactions as being such or similar insofar as the nature of the merchandise is concerned.

Even were we to take a narrower view of the findings of the trial judge, we would consider it evident, at the very least, that he also had sufficient grounds to find that there were other sales of random width veneer during the period in question which were not shown to have been sold in accordance with a 95% exchange settlement rate. This relates to the manufacturer's statement in his response to appellant's interrogatory

number 13 (at page 83 of the record) that he sold or offered to sell "such veneer" to other customers in Canada or the United States. This would be a sufficient basis for the trial judge's statement that the evidence established " * * that this type of veneer was sold by the Canadian producer to the importer, Ben Pivnick Plywood & Veneer Company * * * and others for exportation to the United States." It follows from this that the trial judge was correct in not giving effect to an arrangement which was not proven to have governed even other sales of the identical merchandise. For the reasons set forth above, we are of the opinion that the decision of the trial court should be affirmed.

Judgment will be entered accordingly.